IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:07-CR-0403 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **RASHI ABDUL USHERY** | : | |

### MEMORANDUM

Presently before the court is the motion (Doc. 18) of defendant Rashi Abdul Ushery to suppress evidence seized during a warrantless search of the vehicle he was operating on June 24, 2007. The court held an evidentiary hearing on defendant's motion on November 29, 2007, after which the parties filed supplemental briefs in support of their respective positions. (See Doc. 28 at 1; see also Docs. 30, 31.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be denied.

**I.   Findings of Fact**[1]

On October 3, 2007, defendant was indicted by a grand jury. The indictment charges defendant with possession of cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). (See Doc. 1.) On October 18, 2007, defendant entered a plea of not guilty to the indictment. (See Doc. 13.) The allegations in the indictment arise from the seizure of cocaine base after a search of the automobile

---

[1] These findings are based on testimonial and documentary evidence presented at the hearings on the motion. The findings substantially reflect testimony given by the police officers who performed the search, which the court finds credible.

driven by defendant.  On November 18, 2007 defendant filed a motion to suppress the fruits of that search.

The search occurred in the pre-dawn hours of June 24, 2007, during which Officer Brant Maley ("Officer Maley") of the Penbrook Police Department was on patrol in a marked vehicle.  (Doc. 28 at 5.)  His police car was positioned on a side street intersecting Market Street Road in Penbrook Township.  (Id. at 6.)  The headlights of Officer Maley's vehicle were on high beam, illuminating the section of Market Street Road in front of him.  (Id.)  At approximately 3:20 a.m., Officer Maley saw a white Cadillac moving toward him along Market Street Road.  (Id. at 5.)  The vehicle passed before him, and he observed that its windows were darkly tinted.  (Id. at 6.)  It was "immediately apparent" to Officer Maley that the Cadillac's window tint was darker than permitted by Pennsylvania vehicle regulations.[2]  (Id.)  He stopped the automobile based upon his assessment of a state vehicle code violation.  (Id. at 6-7); see also 75 PA. CONS. STAT. § 4524(e)(1); 67 PA. CODE § 175.67(d)(4), .265 tbl. X (mandating that the front and side windows of passenger vehicles transmit at least seventy percent of light into the vehicle's passenger compartment).

Officer Maley approached the passenger side of the Cadillac and addressed the driver, who identified himself as Rashi Ushery, the defendant herein.  (Id. at 7.)

---

[2]Officer Maley testified that he has stopped vehicles for window tint violations on hundreds of occasions.  He formed his belief about the legality of the Cadillac's tint based upon this experience.  (Doc. 28 at 6.)

Defendant was transporting Chanika Brown ("Brown") in the front passenger seat of the vehicle, which was registered to defendant's father, Ronald Ushery. (Id. at 12-13, 26; see also Doc. 18-3 at 15.) While speaking with defendant, Officer Maley detected "the obvious odor of burnt marijuana coming from the vehicle."[3] (Doc. 28 at 7.)

He returned to his patrol car to radio for assistance and to request a background check of defendant. (Id.) Officer Maley also prepared a warning card for the window tint violation, but, as events unfolded, he never presented the warning card to defendant. (Id. at 16-17.) Officer Ryan Lindsley ("Officer Lindsley") and Officer Anthony[4] of the Susquehanna Township Police Department arrived on the scene in response to Officer Maley's request for backup. (Id. at 10; see also Doc. 18-3 at 15.) Officer Lindsley measured the Cadillac's window tint and determined that it transmitted only sixteen percent of light through the window. (Id.) Pennsylvania regulations require vehicle windows to have a light

---

[3]Officer Maley testified that he recognized the marijuana odor because he had encountered it on numerous past occasions. His initial drug training occurred at the police academy, where a drug task force instructor burned marijuana under controlled circumstances to allow officer trainees to become familiar with it. (Id. at 8.) He has encountered the odor on hundreds of occasions during his seven years of service as a police officer. (Id. at 8-9.) He has frequently performed searches based on the odor and has discovered corroborating evidence of marijuana use in a "large majority" of those cases. (Id. at 9.) Additionally, Officer Maley has participated in the execution of residential and drug-related warrants throughout his career. He has often smelled burnt marijuana in connection with those duties, confirmed by subsequent discovery of marijuana or associated paraphernalia. (Id. at 9-10).

[4]The record does contain Officer Anthony's forename.

transmittance rate of at least seventy percent. See 67 PA. CODE § 175.67(d)(4), .265 tbl. X.[5] Officer Lindsley also corroborated the existence of a burnt marijuana odor emanating from the vehicle.[6]

The background check requested by Officer Maley revealed that defendant had a history of firearms offenses. (Doc. 28 at 11, 19-20.) Officer Maley asked defendant to exit the vehicle and frisked him for weapons. (Id.) The frisk produced no weapons or contraband. (Id. at 21.) Officer Maley informed defendant that he detected an odor of marijuana and asked defendant to consent to a search of the vehicle. (Id. at 11.) Defendant refused. (Id.) Officer Maley then telephoned Ronald Ushery and explained the illegal window tint and marijuana odor. (Id. at 12.) Officer Maley requested consent to search the vehicle, which Ronald Ushery granted. (Id.)

---

[5]The Pennsylvania Vehicle Code prohibits any "person [from] driv[ing] any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 PA. CONS. STAT. § 4524(e)(1). The Pennsylvania Department of Transportation has promulgated regulations requiring passenger cars to transmit at least seventy percent of light through the windshield and side windows. See 67 PA. CODE § 175.67(d)(4), .265 tbl. X.

[6]Officer Lindsley testified that his professional experience with the odor of burnt marijuana enabled him to identify the smell emanating from the vehicle. Officer Lindsley's first encounter with the odor of marijuana occurred during police academy training similar to that of Officer Maley. (Doc. 28 at 41; see also supra note 3.) During his fifteen years of service as a police officer, Officer Lindsley has participated in numerous marijuana cases and has frequently encountered the odor of burnt marijuana. (Id. at 39, 41.) In light of his drug law enforcement experience, he "was [one] hundred percent [certain that] [t]here was a smell of marijuana in the car" operated by defendant. (Id. at 42.)

The police searched the Cadillac.  They found no marijuana but discovered five small plastic bags in the center console containing seventy-five grams of "an off[-]white chalky substance which [they] immediately suspected was crack cocaine."  (Id. at 13, 26.)  A subsequent field test confirmed that the substance was cocaine. (Doc. 18-3 at 15.)  Officer Maley attempted to arrest defendant, who fled the scene.  (Doc. 28 at 13.)  Brown also fled.  (Id. at 26.)  Defendant was apprehended three months later, and the charges in the instant case were filed against him.  Brown is not subject to the present indictment.

## II.    Discussion

Defendant proffers two arguments in favor of suppression.  He first contends that the police lacked probable cause to perform the traffic stop based upon the Cadillac's window tint and that the cocaine must be suppressed as fruit of an illegal stop.  In the alternative, he argues that the vehicle search violated his Fourth Amendment rights because police lacked probable cause to search the vehicle and Ronald Ushery's consent to search was ineffective.  The court will address these issues *seriatim*.

### A.    Probable Cause for the Traffic Stop

With limited exceptions, the Fourth Amendment's prohibition against "unreasonable searches and seizures" requires officials to obtain a warrant before searching persons or property.  See United States v. Arvizu, 534 U.S. 266, 573 (2002). A traffic stop constitutes a seizure within the parameters of the Fourth Amendment despite its relatively limited duration.  See id.; United States v. Delfin-

Colina, 464 F.3d 392, 396 (3d Cir. 2006). Nevertheless, a police officer need not obtain a warrant before stopping a vehicle if the officer has probable cause to believe a traffic violation has occurred. See United States v. Leal, 235 F. App'x 937, 938 (3d Cir. 2007) (quoting Whren v. United States, 517 U.S. 806, 810 (1996)) ("A law enforcement officer's good faith decision to stop a car is 'reasonable where the police have probable cause to believe that a traffic violation has occurred.'").[7] A court looks to the totality of the circumstances when assessing the existence of probable cause or reasonable suspicion. Jones v. Middletown Twp., No. 06-3574, 2007 WL 3326854, at *3 (3d Cir. Nov. 8, 2007); United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005); United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984).

Under this standard, an officer may stop a vehicle for a window tint violation if the tint is sufficiently dark that a reasonable officer would suspect it violates vehicle regulations. See Leal, 235 F. App'x at 938-939 (citing Holeman v. City of New London, 425 F.3d 184, 190 (2d Cir. 2005)) (holding that officer's reasonable belief that darkly tinted windows violated Pennsylvania Vehicle Code justified traffic stop); United States v. Roberts, 77 F. App'x 561, 562 (3d Cir. 2003) (stating that vehicle's excessively tinted windows supported officer's belief that vehicle violated applicable traffic laws). A reasonable belief that window tint violates traffic

---

[7]Probable cause is sufficient, but not necessary, to justify a routine traffic stop. Police may stop a vehicle without violating the Fourth Amendment if they have "'reasonable suspicion to believe that a traffic law has been broken.'" Delfin-Colina, 464 F.3d at 396 (quoting United States v. Willis, 431 F.3d 709, 723 (9th Cir. 2005)).

regulations will justify a stop regardless of whether a window tint violation is ultimately found to exist or whether the driver is cited for it.  See Delfin-Colina, 464 F.3d at 398 (holding that the ultimate charge need not be related to the basis for the traffic stop provided that police had probable cause to believe that defendant had violated traffic laws at the time of the stop).

In the case *sub judice*, Officer Maley parked his patrol vehicle in a position perpendicular to defendant's line of travel along Market Street Road.  Officer Maley's headlights, on high beam, shone directly across defendant's path.  This location allowed Officer Maley to observe defendant's automobile as it passed through the floodlight of his patrol car's high beams.

When the Cadillac when it passed Officer Maley, it was "immediately apparent" that the opaqueness of the vehicle's windows violated Pennsylvania vehicle regulations.  (See Doc. 28 at 6.)  Officer Lindsley, who arrived after defendant's vehicle was stopped, stated that "just by looking at [the window tint,] it was very dark."  (Id. at 40.)  The officers' observations were confirmed when Officer Lindsley formally measured the window tint and determined that it transmitted only sixteen percent of light, well below the seventy percent required by Pennsylvania regulations.

Officer Maley's belief that the tint grade violated Pennsylvania law was eminently reasonable when considered in light of his initial observation of the Cadillac's windows and his experience stopping and testing hundreds of vehicles for window tint violations.  Therefore, the court finds that Officer Maley had

probable cause to stop the Cadillac and did not violate defendant's Fourth Amendment rights by doing so.  The cocaine seized during the subsequent search cannot be suppressed as the fruit of an illegal stop.

### B. Probable Cause for the Vehicle Search

A warrantless search is presumptively unreasonable, and the burden is on the government to establish by a preponderance of the evidence that the circumstances justified acting without a warrant.  Vale v. Louisiana, 399 U.S. 30, 34 (1970); United States v. Herrold, 962 F.2d 1131, 1137 (3d Cir. 1992).  In the automobile context, police need not obtain a warrant to search a vehicle if "probable cause exists to believe it contains contraband."  Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); see also United States v. Johns, 469 U.S. 478, 484 (1984) (quoting U.S. v. Ross, 456 U.S. 798, 823 (1982)) ("'[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband.").

The odor of "marijuana alone, if articulable and particularized, may establish . . . probable cause" for officers to believe that contraband is present in the area from which the scent emanates.  United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006) (quoting United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004)); see also Johns, 469 U.S. at 482 (holding that officers who detected the smell of marijuana within automobiles had probable cause to believe they contained contraband); United States v. Simmons, No. 06-3902, 2007 WL 3122169, at *3 (3d Cir. 2007) (reiterating that odor of marijuana alone provides probable cause to search an

automobile in the context of a traffic stop). If the source of the odor is a vehicle, police may search the vehicle without a warrant pursuant to the automobile exception to the warrant requirement. See Maryland v. Dyson, 527 U.S. 465, 467 (1999) (stating that police may search the entirety of a vehicle without a warrant if probable cause exists to believe it contains contraband); United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) ("The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" (citation omitted)); United States v. Rickus, 737 F.2d 360 (3d Cir. 1984) (holding that probable cause to believe that an automobile contains contraband allows police to search the trunk regardless of whether they believe that "the contraband for which they are searching is located specifically in the trunk"); accord Humphries, 372 F.3d at 658 ("While smelling marijuana does not assure that marijuana is still present, the odor certainly provides probable cause to believe that it is."). Any contraband seized as a result of the search will be admissible even if the search produces no additional indications of marijuana use. See United States v. Nelson, Crim. Action No. 06-240, 2006 WL 2711743, at *4 (E.D. Pa. Sept. 19, 2006).

In Nelson, our sister court for the Eastern District of Pennsylvania applied these principles to facts similar to those presently before the court.[8] In Nelson, a

---

[8]Prior to the evidentiary hearing for the instant case, this court directed the parties to Nelson for its potentially determinative resolution of the issues raised in the pending motion. At the hearing, the court granted the parties one week during which to file supplemental memoranda addressing the application of Nelson and

9

police officer stopped the defendant's vehicle for speeding. See id. at *1. The officer detected an odor of marijuana wafting from the vehicle. See id. The officer requested backup assistance, and when additional officers arrived, they confirmed the odor. See id. at *2. The officers then searched the vehicle, finding no marijuana but discovering cocaine base in the trunk. See id. The defendant filed a motion to suppress. The learned trial judge denied the motion, opining that the odor of marijuana provided probable cause for the officers to search the entire vehicle for contraband. See id. at *4 ("Because the smell of marijuana from the defendant's vehicle provided probable cause, [the police officer] was not required to obtain a warrant before searching the vehicle.").

---

other relevant case law to the instant matter. (See Doc. 28 at 74-76.) Both parties have submitted supplemental filings addressing Nelson's effect on the issues presently before the court. (See Docs. 30, 31.)

Nelson provides a ready analogy for the instant case.[9]  Both Officer Maley and Officer Lindsley detected a distinct odor of burnt marijuana emanating from the passenger compartment of the Cadillac.  Officer Maley stated that he has participated in hundreds of situations involving the odor of burnt marijuana and recognized it based on this experience.  Likewise, Officer Lindsley testified that his many years of drug enforcement work enabled him to identify the odor.  Both officers expressed certainty in their perception: Officer Maley stated that he noticed "the obvious odor" of marijuana in the Cadillac, (see Doc. 28 at 7), and Officer Lindsley testified that he had "[one] hundred percent" confidence in his conclusion that the vehicle contained the scent of burnt marijuana, (see id. at 42).

In light of the officers' experience in drug enforcement and their frequent encounters with the smell of marijuana, the court finds their testimony regarding

---

[9]Defendant urges the court to diverge from Nelson's analysis as non-binding authority that relied on the *dictum* of Ramos v. United States, 443 F.3d 304 (3d Cir. 2006).  That *dictum* stated that an odor of marijuana emanating from a particularized location provides probable cause to search the source.  See Ramos, 443 F.3d at 308.  Nevertheless, the Nelson court stated: "Although technically *dictum*, the Court believes the statement in Ramos is an accurate statement of the law in [the Third Circuit.]"  See Nelson, 2006 WL 2711743, at *4.  The Nelson court bolstered its holding by observing that seven other Courts of Appeals have reached similar conclusions.  See id. (collecting cases).  At least two additional circuits accord with those identified in Nelson.  See United States v. Jenkins, 452 F.3d 207, 214 (2d Cir. 2006) (holding that odor of marijuana provided probable cause to search an automobile); United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998) (same).  This court further notes that it has relied on the Ramos *dictum* in at least one other case.  See United States v. Simmons, No. 1:CR-06-041, 2006 WL 1289356, at *3 (M.D. Pa. May 9, 2006) (applying Ramos to conclude that odor of marijuana "alone . . . give[s] probable cause to search [a vehicle]"), aff'd No. 06-3902, 2007 WL 3122169 (3d Cir. Oct. 26, 2007).

the odor emanating from the Cadillac to be credible. The officers had probable cause to search the Cadillac based on the smell of burnt marijuana particularized to the passenger compartment of the vehicle. This probable cause allowed them to search the vehicle without a warrant pursuant to the automobile exception to the warrant requirement. See Burton, 288 F.3d at 100. Therefore, the officers did not violate defendant's Fourth Amendment rights when they searched the Cadillac, and the cocaine seized during that search cannot be suppressed on those grounds. Having concluded that police had probable cause to search the Cadillac, the court need not address whether Ronald Ushery's consent was sufficient to authorize the search. See id. ("[T]he 'ready mobility' of automobiles permits their search based only on probable cause." (citations omitted)).

## III.   Conclusion

Neither the initial stop of the Cadillac nor the subsequent search thereof violated defendant's Fourth Amendment rights. Defendant's motion to suppress must therefore be denied.

An appropriate order will issue.

                                               S/ Christopher C. Conner
                                              CHRISTOPHER C. CONNER
                                              United States District Judge

Dated:      December 12, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:07-CR-0403** |
| : | |
| **v.** : | **(Judge Conner)** |
| : | |
| **RASHI ABDUL USHERY** : | |

## **O R D E R**

AND NOW, this 12th day of December, 2007, upon consideration of defendant's motion to suppress evidence (Doc. 18) and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 18) is DENIED.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge