IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:07-CR-403** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **RASHI USHERY** | : | |

## MEMORANDUM

Presently before the court is petitioner Rashi Ushery's ("Ushery") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Ushery claims his conviction should be vacated because he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Specifically, he contends that defense counsel was ineffective in 1) failing to introduce certain evidence; and 2) failing to contest the sufficiency of evidence on appeal.[2] (Id.) For the reasons that follow, Ushery's motion (Doc. 88) will be denied.

**I.     Statement of Facts & Procedural History**

On June 24, 2007, at approximately 3:23 a.m., Officer Brant Maley ("Maley") observed Ushery driving a white Cadillac with what the officer suspected were illegally tinted windows. (Doc. 84 at 5). Maley initiated a traffic stop, and observed Ushery and passenger Chanika Brown ("Brown") in the front seats. (Id. at 6).

---

[1] "A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Id. § 2255(a).

[2] Attorney Royce L. Morris represented Ushery both at trial and on appeal. Ushery brings the instant motion *pro se*.

While obtaining Ushery's license and registration, Maley detected the odor of burnt marijuana emanating from the vehicle. (Id. at 9). Maley searched Ushery's name for past criminal offenses, and discovered that Ushery had a history of firearms violations. (Doc. 18–2 at 15). Based on the odor of marijuana and Ushery's history, Maley called for backup. (Id.; Doc. 84 at 9). He was joined first by Officer Ryan Lindsley ("Lindsley"), who confirmed that Ushery's windows were too dark.[3] (Doc. 84 at 10, 62). Lindsley also smelled the odor of marijuana. (Id. at 62). Officer Brooke Anthony arrived soon after Lindsley. (Id. at 9).

Ushery exited the car upon Maley's instruction. (Id. at 12). Maley then asked Ushery if he could search the car, a request that Ushery denied. (Id.) Noticing that Ushery's father, Ronald Ushery, was listed along with his son on the vehicle's insurance card, Maley called Ronald, who consented to a search of the vehicle. (Id.) During the search, Maley found seven bags of chalky white material – shown later to be crack cocaine – hidden in the cup holder compartment of the car. (Id. at 14). Maley attempted to place Ushery under arrest, at which point Ushery fled the scene on foot. (Id. at 14-15). While the officers pursued Ushery, Brown also fled the scene, but was found a little more than an hour later. (Id. at 96). Ushery was not found until September 20, 2007. (Id. at 24).

---

[3] Officer Lindsley employed a "tint meter," a U-shaped device that is placed with a prong on either side of a car window. (Doc. 88 at 10). One prong shines light through the window, and the other prong detects the percentage of the light that has passed through. (Id.) Ushery's tinted windows allowed only 16% of the light to pass; Pennsylvania state law requires at least 70% transmission of light. (Id.); see 75 Pa. Cons. Stat. § 4524.

2

On October 3, 2007, a grand jury returned a one-count indictment for possession with intent to distribute 50 or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1). On September 17, 2008, a jury found Ushery guilty of that charge (Doc. 64), and the court sentenced him to a prison term of 135 months. (Doc. 72). Ushery timely appealed the judgment to the Court of Appeals for the Third Circuit, which affirmed. See U.S. v. Ushery, 400 Fed. Appx. 674, 674 (3rd Cir. 2010). On November 28, 2011, Ushery filed a timely motion (Doc. 88) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[4] The motion has been fully briefed and is now ripe for disposition.

## II. Discussion

Ushery alleges that he was denied effective assistance of counsel in violation of the Sixth Amendment.[5] Specifically, he claims that counsel was ineffective for 1) failing to introduce evidence concerning the names on Ronald Ushery's

---

[4] 28 U.S.C. § 2255(f) creates a one-year period of limitation, beginning on the date the judgment becomes final, within which a person in federal custody may petition for a writ of habeas corpus. If a defendant petitions the United States Supreme Court for *certiorari* and is denied, the Court of Appeals's judgment becomes final on the day *certiorari* was denied; if *certiorari* is not sought, the judgment becomes final 90 days after the filing of the appellate court's opinion. SUP. CT. R. 13(1). Ushery did not petition the Supreme Court for *certiorari*, and thus the judgment of the Third Circuit in U.S. v. Ushery became final on February 3, 2011 (90 days after the filing of opinion). The motion presently before the court was filed on November 28, 2011, and is therefore timely.

[5] The Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI.

automobile insurance policies; and 2) failing to contest the sufficiency of the evidence on appeal. (Doc. 88 at 3, 6).

A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a motion, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient representation was prejudicial. See id. at 687-88. In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. See id. at 689 (noting "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. . . and to evaluate the conduct from the counsel's perspective at the time"). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989) (finding that "[t]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (citing Strickland, 466 U.S. at 689)). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711(citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability

4

sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in any particular order, or even address both prongs of the inquiry if the defendant makes an insufficient showing on one. Id. at 697. The court will address each of Ushery's claims in turn.

### A.   Failure to Introduce Insurance Evidence

Ushery's first claim is that counsel rendered ineffective assistance by failing to introduce certain evidence regarding Ronald Ushery's insurance policies. (Doc. 88 at 3). In particular, Ushery finds fault in counsel's failure to explain to the jury that, while both Ushery's and Ronald's names were on the white Cadillac's insurance policy, this was true of "numerous" cars owned by Ronald. (Id. at 3, 6). Ushery also claims that counsel was further ineffective in deciding not to call Ronald as a witness in order to establish this fact. (Id. at 6). Ushery's main contention is that such evidence would have "negate[d] any prejudicial inference drawn from the testimony of Rashi Ushery's name being on the insurance policy [of the white Cadillac]." (Id. at 6).

The government presented evidence showing that both Ushery's name and that of his father were listed on the insurance policy, in order to establish that Ronald Ushery was able to consent to a search of the white Cadillac that his son

had been operating.[6] Even if the fact that Ronald Ushery put his son's name on the insurance policies of all his cars, and not just that of the white Cadillac, was elicited during trial, it is unclear how that would serve as a "defense," as Ushery suggests it could have. (Id. at 6). Ushery appears to be claiming that the evidence would have further distanced himself from the car and weakened his connection to it. (See Doc. 94 at 7). Malay had already testified, however, that Ronald Ushery, and not the defendant, owned the car. (Doc. 84 at 12). Ultimately, the issue at trial was whether Ushery possessed the crack cocaine found within the car, and not whether he owned the car itself. (See id. at 6, 12).

It is unclear what purpose, if any, the introduction of the insurance evidence would have served, and thus counsel's failure to introduce it was not "objectively unreasonable." Ushery has failed to satisfy the first prong of the Strickland test. There is no need to proceed to the second prong of the Strickland test, because both prongs must be satisfied to show ineffective assistance. His claim of ineffective assistance of counsel on these grounds is without merit.

### B.    Failure to Raise Insufficiency of Evidence on Appeal

Ushery's second claim is that counsel rendered ineffective assistance by failing to contest the sufficiency of evidence upon appeal. (Doc. 88 at 2). This claim is predicated on Ushery's contention that the evidence presented by the

---

[6] This court determined that Maley's search of the car would have been valid even without Ronald Ushery's consent, as the smell of marijuana emanating from the car provided probable cause to believe the car contained contraband. (Doc. 32 at 8-9).

government was insufficient to allow a rational jury to reach a guilty verdict. (Doc. 95 at 2). In order to assess a claim that insufficient evidence existed to sustain a conviction, the appellate court "must determine whether, viewing the evidence most favorably to the government, there is substantial evidence to support the jury's guilty verdict." U.S. v. Wexler, 838 F.2d 88, 90 (3rd Cir. 1988), see also U.S. v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991) (noting that this standard requires the court to determine "whether a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses." (citing U.S. v. Samuels, 741 F.2d 570, 573 (3d Cir. 1984)). Ushery lists what he believes to be a number of shortcomings in the government's case, including an absence of evidence that Ushery was behaving nervously during the traffic stop and the inability of the government to show that Ushery possessed any drug paraphernalia. (Doc. 88 at 2, 4). Ushery asserts that the government relied primarily on speculation to prove their case. (Doc. 95 at 2).

The record, however, is by no means devoid of incriminating evidence. It is undisputed that, on the morning of June 24, 2007, Ushery was driving a vehicle that was lawfully stopped and searched, and that the search produced 65.7 grams of crack cocaine, an amount "not consistent with someone who is involved in [mere] personal use." (Doc. 84 at 6, 12, 53, 105). It is similarly undisputed that, when Maley told Ushery to place his hands behind his back, Ushery fled on foot, and remained at large for 88 days. (Id. at 15, 24). Maley also testified that, prior to Ushery's flight,

he patted down Ushery and found him to be in possession of three cellular telephones.  (Id. at 13).

Chief John Goshert, a detective for the Dauphin County District Attorney's Office, testified as an expert witness that the amount of crack cocaine found in the vehicle, worth approximately $6,500, was more consistent with a "mid level trafficker" than with an individual user.  (Id. at 108).  The 65.7 grams of crack cocaine present in the vehicle was hundreds of times greater than the amount an individual user might consume at one time.  (Id.)

Ushery correctly points out that flight from arrest, by itself, has been recognized for over a century as insufficient to establish guilt beyond a reasonable doubt.  See Hickory v. U.S., 160 U.S. 408, 417-21 (1896).  However, it is also true that while "[h]eadlong flight. . . is not necessarily indicative of wrongdoing. . . it is certainly suggestive of such."  Illinois v. Wardlow, 528 U.S. 119, 124 (2000).  The evidence of Ushery's flight was but one piece of many in the prosecution's case, which also included the facts surrounding the traffic stop and subsequent search, circumstantial evidence relating to the stop and quantity of drugs found, and the testimony of the arresting officers and an expert in drug cases.  (See Doc. 84).

In light of all of the evidence against Ushery, coupled with the high standard that must be met to overturn a conviction based on insufficiency of evidence, Ushery's counsel was not "objectively unreasonable" for failing to raise this issue on appeal.  The Supreme Court noted in Smith v. Robbins that "appellate counsel. . . need not (and should not) raise every nonfrivolous claim, but rather may select

from among them in order to maximize the likelihood of success on appeal." 528 U.S. 259, 288 (2000). It appears that this is precisely what Ushery's attorney did, albeit unsuccessfully, choosing on appeal to focus on the trial court's denial of a motion to suppress evidence and exclusion of certain evidence pertaining to Ushery's passenger, Chanika Brown. See Ushery, 400 Fed. Appx. at 674.

Ushery's claim that his counsel provided ineffective assistance by failing to challenge the sufficiency of evidence at trial does not satisfy the first prong of the Strickland test, because counsel was not objectively unreasonable in declining to raise a claim that was unlikely to succeed. The court therefore declines to address the second prong of the Strickland test. Ushery's claim of ineffective assistance on these grounds is without merit.

## III. Conclusion

For the foregoing reasons, Ushery's motion (Doc. 88) to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 will be denied. An appropriate order follows.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: July 12, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:07-CR-403** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **CHRISTOPHER D. JONES** | : | |

## **ORDER**

AND NOW, this 12th day of July, 2012, upon consideration of the motion (Doc. 88) filed by Rashi Ushery to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.  The motion (Doc. 88) is DENIED.

2.  A certificate of appealability is DENIED.  <u>See</u> 28 U.S.C. § 2253(c).


           S/ Christopher C. Conner
           CHRISTOPHER C. CONNER
           United States District Judge